Cases 18-2199 and 18-2200 Lebamoff Enterprises Inc. et al. v. Rick Snyder et al. Argument not to exceed 15 minutes for each appellant and 30 minutes for the appellees. You may proceed for the appellants in case 18-2199. Good morning, Your Honors. May it please the Court, Mark G. Sands, Assistant Attorney General for the State Defendant Appellants. I'd like to request two minutes for rebuttal. This case presents the Court with an opportunity to apply the Supreme Court's recent decision in Tennessee Wine to a state law allowing retailers within Michigan's three-tier system to deliver wine directly to customers. As explained by the Supreme Court, cases involving the interplay between the 21st Amendment and the Dormant Commerce Clause require a different inquiry because the 21st Amendment allows states to regulate alcohol in a manner that may otherwise be prohibited by the Dormant Commerce Clause. That inquiry asks whether the challenged law has the predominant effect of promoting public health and safety. If it does, and it's not protectionist, then the law is a correct use of state power under Section 2 of the 21st Amendment. And the uncontested record in this case provides real, tangible evidence that Michigan's retailer delivery scheme has the predominant effect of protecting public health and safety, and there are three primary reasons why it does. So does that mean that if the overall import of the statutory scheme promotes health and safety, that it basically inoculates any portions of the scheme, or do all aspects of the scheme have to meet the test? They have to be non-protectionist, Your Honor. Every part of the system. I'm interested in the restrictions that the consumers here are complaining about that basically say we can't get anywhere near the broad variety of wines that are available through the three-tier system. And would you concede that that's true, the way the three-tier system works? That's true, but it's not necessarily because of the three-tier system. I didn't ask you if it was because of it. So they're in the neighborhood of maybe 300,000 wines that are available around the world, and in Michigan you can buy some couple thousand. Is that a fair statement? Yes, but those couple thousand, let's say you have one variety of wine and they make it every year, that would count under Michigan's counting scheme as one wine. So a Sauvignon Blanc from a winery in California would register that wine, and they wouldn't have to re-register it every year. So the 2011, 12, 13, 14, et cetera. So you're saying that the universe of 300,000 may be high in terms of producers. Right. But it's a lot. Yes. And it's a lot more than what you can get in Michigan through the three-tier system. It seems to me that, ignoring the special producer license that allows them to ship into Michigan, that the bottleneck, if that's the right word to apply to it, is really the wholesalers. The wholesalers determine then what wine can be sold at retail in Michigan. That's not really true, Your Honor. How can the retailer get the wine if the wholesaler doesn't carry it? A lot of the reason why wines aren't available is because the manufacturers make the decision not to distribute wine in certain areas. Are you saying that the wholesalers carry every wine that a retailer, that a producer wants to have distributed in Michigan? Generally, yes. Most of the time when a wine isn't available, the availability is. That does come back to the shipping point. I mean, a reason some producers don't want to sell to wholesalers in Michigan is the hassle of getting it there, having the wholesaler then get it to the retailer. Isn't that likely true? In other words, there are plenty of producers that would be happy to direct ship to Michigan. And they can get a direct shipper license to do just that. And the reason why Michigan has a direct shipper license is to facilitate wineries that it doesn't make economic sense for them to ship small quantities of wine into Michigan. To be eligible for that license, do you have to be small, like a certain size? Yes. That still leaves back to Judge McKeek's point. A lot of producers, the consumers in Michigan aren't really able to get access to because they're too big for the direct shippers license. And they think it's economically not feasible. That's true. The intention by the manufacturers not to sell the wine in Michigan is not of constitutional dimension. And it doesn't make a valid three-tier system protectionist. And protectionism is the real nub. So just to make sure I'm getting all your answers to Judge McKeek's questions, are there any producers that want to sell wine in Michigan that the state is saying no to, either through the wholesaler or the state just saying, no, we won't, sorry, we're not going to sell it? Unless they're making wine that is unlawful in Michigan, so marijuana-infused wine. I don't mean that. Okay. None that I'm aware of, Your Honor. So the producer can get a special license and then not only, and then they can sell direct to the consumer. That's right, Your Honor. Or if the retailer, if the producer wants to, they can sell through the wholesaler and you say the wholesaler will buy any producer's wine that wants to sell it in Michigan. That's my understanding, yes. All right. And that's true for vintage wines, rare wines, anything? Yes. So why are there so few wines available in the retail stores in Michigan then? A lot of it, as I said, is a manufacturer's decision. You have some, they just don't make enough wine and so they will market it in just one area. It's likely that other reasons, this probably relates a little bit to the Indiana-Michigan situation. Michigan just is placing more price controls. Isn't that what the explanation might be? That wouldn't affect the manufacturer. The manufacturer can sell the product to the wholesaler at whatever price they want. Yeah, but it's not great if you realize when it's sold at the consumer they're not going to want it because it's priced too high. Whereas if they sell it to wholesalers in Indiana, they won't run into that problem or Illinois. That's right. But you have your two-buck chuck, which I think now is actually three bucks. You may not want to sell it if it ends up pricing $5. It destroys your whole marketing scheme because of the Michigan markups. Is that become the real answer to his question, why Michigan consumers don't have access to as many wines as, say, Illinois or Indiana? It's possible, but what you have to understand is part of the three-tier system is Michigan has to set prices for alcohol that make it available to consumers, but don't overstimulate consumption because, of course, as you know, I'm sure this court is aware, and Judge Sutton, you were on the Byrd case, so I know you're aware, that before Prohibition, one of the major problems with alcohol is that it was sold so cheaply in these saloons that it stimulated consumption to the point where we had to control the price of the wine that's sold in Michigan under the direct shipper licenses. The producers that get the license, they can market it at any price they want. That's true. They can deliver it right to your house so you don't even have to get out of your pajamas to drink wine. You do not. So at least in terms of what the ultimate restrictions are on the consumer, and I understand you may not concede that that even is true, but I'm using that as a hypothetical, I'm just trying to figure out how does it promote health and safety to have the wholesalers exist as sort of the bottleneck through which wine has to come when you already allow wine to come right into the state and go right to the house? Because we know where the wine comes from. So, for example, if there's... Is there any example that the state can ever point to that there was a problem of wine coming and it didn't know where it came from and it was somehow contaminated? No, but if you look outside of the United States in places that don't have the three-tier system, you have that problem. You have that problem in the United Kingdom, you have that problem in Israel, as we pointed out in our brief, and you have that problem in Mexico. And where... It's all with liquor, not wine, isn't it? That's... The examples we have are with liquor, but... So is there any example even worldwide of adulterated wine that you're trying to protect the wine aficionados in Michigan from drinking? You did have an example, and I apologize this is outside of the brief, where you have collectors that buy a bottle of wine and it turns out to be fake. I believe it was one of the Koch brothers, very well known. You're not really relying upon that to say that that portion of the scheme in Michigan promotes health and safety, are you? One Koch brothers, vintage wine, fake? No, but it does show that it has happened, and I don't have any specific examples. So here's sort of the bottom line that I want you... Sort of teeing up for you that I want you and your fellow lawyers to address. I understand the point of the 21st Amendment when it was passed, and there have been a number of cases that have interpreted the 21st Amendment, and sometimes they rule for the Dormant Commerce Clause, sometimes the Supreme Court rules for the 21st Amendment, but would you concede that those cases really all came up in a different global environment than exists today? I wouldn't, Your Honor. Where now Americans are used to buying pretty much everything online, it gets ordered online, it gets delivered right to their house. So should somebody be reconsidering this whole scheme in light of the global economy and the dependence on the Internet? I don't think so, Your Honor. Why not? The reason is because Michigan has... When you say you don't think so, you mean you don't think they have to. You can't object to the possibility that someone could suggest the three-tier system doesn't work anymore. You're right. That's up to Michigan and the legislature. You're right. You're absolutely right, Judge Sutton. The Constitution does not require us to just allow every wine that somebody wants into Michigan. Michigan has the authority. It had the authority under Webb Canyon. Isn't it true that more and more states are creating exceptions, and it looks less and less like this hardcore three-tier system as you travel around the country? Those states have made a decision that allowing more wine in or more product in is advantageous to their citizens. And, again, it's a balance. If we go back to the tiny thing that this case is about, the direct shipping point, there was a time where you could have direct shipping across the border to Indiana. Isn't that right? You couldn't have shipping. You could have employee delivery. Yeah, I guess that's what I mean. What did the statistics show happened? Was there any problem that developed with employees, this direct shipping across or delivery across state lines? The problem that was discovered was not as much with employee delivery as we did detect problems, though, with unlawful shipments by wineries themselves. Even these small direct shippers we allow, we've had problems with them shipping wine to minors at a higher rate than in-state entities. And I think one of the key reasons is a regulatory reason. If a retailer in Michigan acts in an egregious enough manner, I can take their license before they open at 3 o'clock this afternoon. That's real teeth in a regulatory scheme. My question was more cross-border, like the Indiana-Michigan problem. Was there something there? Is there evidence of problems that arose there? There aren't, although there is evidence that there has been illegal shipments, not employee delivery, but shipments from out-of-state retailers. So let's just try to talk about that part of the case. I mean, that is what the case is about. Why do you need this limitation on Lebanoff being able to have direct deliveries across the border? Why is that such a big deal? Because we don't know what they're selling. Uh-huh. We don't know if that... Because their wholesalers are different from the Michigan wholesalers? Yes. And if they do something wrong, I can't put them out of business like I can put a Michigan retailer out of business. So when you say you don't know what they're selling, do you know what the out-of-state wineries, the producers that get these special licenses to direct ship? Yes. I mean, I know you know what they say they're going to ship in. Do you test it? Do you go to the wineries in California? We do random buys, controlled buys. Have those random controlled buys indicated any sort of a problem? Not to this point. But, again, the experience outside of the three-tier system in countries that don't have it is they do have this problem with adulterated product. For what it's worth, that just seems so improbable is what's driving this. What seems to be driving it, and I just can't figure out if it's legit or not, is if you allow direct delivery from the Indiana wholesaler or retailer, you're getting around the three-tier system. That's what you're getting around. Yes. And for you, you want to say that's all about adulteration, miners, and that really isn't the main thing going on. It probably is lower priced if Indiana has lower taxes. I mean, that presumably is why Michigan consumers would want that. And I'm curious why you're not just defending it on that ground. Are you uncomfortable defending it on that ground? Respectfully, Your Honor, I see my time has expired, if I can answer your question. Lower price is important, but it's not a protectionism point. I'm not accusing you of anything. I'm trying to get you to take head-on what seems to be the real issue. And the real issue is there will be price undercutting. And you can say, on one hand, that sounds like discrimination against interstate commerce. Or you could say, on the other hand, that means the three-tier system can't work. Because the three-tier system is about having some price control. How else do you limit the amount of alcohol in a state? I don't disagree with that, Your Honor. But I don't think that's the only – in fact, I don't think I know that that's not the only reason why we have a three-tier system. You've got to admit that there's a huge protectionist aspect of the three-tier system protecting the retailers. Because you're freeing them from the competition, not only throughout the rest of the United States, from throughout the world, of sending wine into the state to what otherwise might be their customer. It's not motivated by protectionism. I didn't say it was motivated. You're changing the question. You have to agree the impact is protectionism, protecting the in-state retailer. Yes. It does have the incidental effect. And what about this guy that has to drive 30 miles to get wine to get to his nearest retailer? Do we worry about him? Or he can just order it online otherwise and get it delivered to his house? Or he can ask his local wine shop to have that wine available in Michigan, which happens all the time. We're not talking about making it available. Just one more question. We're not talking about making it available. We're talking about him getting a hold of it. Right. So he asks the retailer if they'll drive 30 miles to deliver a bottle of Johnny Walker or something? I don't think I'm understanding that. I'll come back to it later. Thank you. Okay. You'll get your full rebuttal. All right. Thank you, Your Honor. Good morning. I'm Debra Skakel from Blank Rome. I represent the intervener-defendant appellant, the Michigan Wine and Beer and Polar Sailors Association. And I just perhaps want to reset things here. And perhaps your questions might be looked at more carefully if one remembers where we are today. We have the benefit of this panel's, well, not this panel's, but this court's 2018 opinion in Tennessee wine. And then we have the benefit of the 2019 Supreme Court opinion, which not only affirmed this court's opinion, but it also gave us a roadmap as to how this case should be decided today. Particularly while the Tennessee case was a residency case, not a direct shipping case, the reason that it is so impactful and provides such good instruction for us is because the linchpin to the ability to get a retail license in Michigan and, therefore, have the benefits and the obligations of being a Michigan retailer, which includes certain direct shipping privileges, is you have to be present here. Yeah. Okay. I think we got all that. Okay. If you want to pick up on the conversation, I pick up on the hard part of the conversation if you want to. Okay. Let me tell you what the hard part of the conversation is. The hard part of the conversation is that this is a case about direct shipping, right? Yes. That's the point. And it does seem a little flimsy and not the heart of the matter to say they're doing this because of protecting minors from getting it or doing it because of adulterated fancy wines. That seems quite improbable. It seems like the heart of the case is they need to do this because otherwise you can just end run the three-tier system. And you end run it because Libemoff buys from Indiana wholesalers. Obviously Michigan is not regulating them. That's a whole separate regime. Presumably the reason people in Michigan want to buy from Libemoff is the cost structure is lower, whether there's fewer taxes, whatever it is. And so you have what seems legitimate, protecting the three-tier system. The court says over and over that's okay. But then when you focus on what's really going on, it's all a price point, and that starts to look like dormant commerce clause. So that's what the hard point is. Your Honor, I agree with you up to the very last point. If what Libemoff is complaining about and what the individual plaintiffs, who ironically are all attorneys, are complaining about is not just the ability to purchase a product but at what price point, then that is a Sherman Act question. In other words, if you're going after ‑‑ I would say both sides have pretextual explanations of what they're doing. But I think the heart of the matter is price. And the question is whether the three-tier system is allowed to do that. And I can see a pretty good explanation they can. If you have perfect Adam Smith efficiency, you have lots of alcohol at low prices and people who can't say no to the third drink. And that leads to all kinds of problems. So why not embrace that? But I'm not hearing either of you embracing that. Your Honor, I fully embrace it because orderly markets, as the Supreme Court recognized and as this court recognized in Tennessee Wine, is another legitimate ground for the presence requirement. And again ‑‑ Orderly as in highly regulated? Well, orderly markets, in other words, markets that don't allow below‑cost sales. Michigan doesn't. Indiana does. But the direct producers can sell and deliver in Michigan below cost if they want to, can't they? You don't regulate their price. That's correct, Your Honor. But remember, there's a big difference between the wineries and the retailers. The wineries are ‑‑ it is not ‑‑ the wineries is an exception to the three-tier system because they are able to go totally around it. I understand. But the question then becomes whether the exception then screws up the whole three ‑‑ it invalidates the whole rationale for the three-tier system. Respectfully, Your Honor, there is a significant difference between a winery and a retailer. And the three-tier system, by definition, let's go back to basics. What is a three-tier system? At the top ‑‑ We know all that. I understand, Your Honor. But the thing that one has to ‑‑ I like the basics anyway. Bear with her. Well, let me just say what it isn't. In other words, a retailer, an Indiana retailer coming directly to a Michigan consumer, that is an exception to the three ‑‑ that's not an exception to the three-tier system because they otherwise would have to come through. Why is a winery an exception? Because they are going completely around it. Here, the link from the wholesaler to the retailer is a link that has been approved time and time again by courts. And that is part of the legitimate three-tier system. There's never been a direct shipper challenge. Surely there has, Your Honor. And, in fact, this court noted ‑‑ Residency? Well, they have noted that having an in‑state wholesaler and an in‑state retailer, which is exactly what we're talking about here, right? You have to be in‑state. You have to be in Michigan in order to get both the burden and the benefit of Michigan regulatory law. Unless you're a producer with a special license. That is correct, Your Honor. But, again ‑‑ Let me throw another wrinkle in. We've been talking about price up to now. How about variety and choice? It seems to me this country is all about choice. Do you agree with your fellow lawyer that all of the wines that producers want to sell in Michigan are carried by the wholesalers? Your Honor, yes. Because the uncontroverted evidence on this point is in the Kaminsky Affidavit, who is a wholesaler in Michigan, Modern Beverage. And in his affidavit, which is RE33‑2, he lists a number of reasons why wineries choose not to have their wines sold in Michigan. And, in fact, that ‑‑ That's the opposite of the question. I'm saying, do you agree that, in fact, all wine that's available in the world is carried by wholesalers? No, Your Honor. But all wine available in the world is not carried by any wholesaler in any state. And the wholesaler's decision is premised on what? The wholesaler's decision is not a unilateral one. The wholesaler's decision is, in large part, driven by the supplier, whether the supplier wants that product in Michigan, number one. And, number two, whether the supplier wants to work with that wholesaler. And, again, the Kaminsky Affidavit is backed up by the Breidenbau Affidavit, which is what the Appleese put in. And Mr. Breidenbau said, you know, of the wines that I searched that are at issue, in other words, we want to get them in Michigan, the winery does sell directly to the public, but when he did his research, they were listed either as sold out or they weren't listed at all. In other words, it's the winery's choice either to only sell to high-end restaurants, to only sell at their tasting rooms. So you're saying the evidence that's before us doesn't back up the assertion that there's a lot of wine out there that you can't get in Michigan because of the three-tier system? That's correct, Your Honor, precisely said. So what happens if you follow Judge Tarnow's approach both on the underlying merits and the remedy? Does this become a border state problem? I realize you've all argued that no, no, no, that means everybody could be selling. But I'm wondering if that's really true given the costs of shipping from farther away. My instinct is it really just becomes an Indiana, Ohio, Illinois-type problem. What's the reality there? Your Honor, under Judge Tarnow's decision, he does not limit it in any way. I know. I read your briefs. I realize what you say is going to happen. I'm telling you I'm skeptical. That's the premise of my question because I think if you start shipping from California and so forth, there's a lot of cost involved in that. So it's really not going to be the end run around the three-tier system, but that it will be locally is my premise. But maybe I'm wrong. Your Honor, the problem with that argument is that you are defining what exceptions to the three-tier system by, again, pricing. And that is not constitutionally correct. And here, even the appellees say that there are likely to be around 2,000 retailers that will take advantage of this. So that's certainly more than the retailers on the border of Indiana. So the problem with Judge Tarnow's remedy is that it's, first of all, his decision is improper in terms of the merits. But on the remedy, the very things that he notes is proper in the Michigan three-tier system, no below-cost sales, post and hold, no sales on credit. All of that would go out the window because none of those things would apply to a retailer who's outside of Michigan State. So the remedy actually turns on its head the very three-tier system that Judge Tarnow seemed to be blessing, in addition to which he did absolutely no severability analysis under this state's severance law. So that's a huge problem. And he also, his remedy is inconsistent with what the Supreme Court has said and what this court has said in terms of severability, including as recently as the Sixth Circuit decision in Tennessee Wine. Again, you have to do some sort of severance analysis, and he did nothing. In addition to which, the use of federal cases like Califano to say, okay, you've got to open it up, it's a wrong analogy. Those cases, those federal cases are talking about governmental benefits where the purpose of the statute is government largesse. That is not the case here. To the contrary, this is alcohol beverage products, and it is not the policy of any state in this country, certainly not Michigan, to open it up and have largesse when it comes to the sale and distribution of alcohol beverage products. Are there at least some number of states that don't even have three-tier systems? Those systems where it's a control state, Your Honor. In other words, where the state is essentially the retailer. Yes, they do not have three-tier systems. So there are no states that you're aware of that don't have either the three-tier system or the state selling it itself? That's correct. Now, in Michigan, as you may recall, it's a bit of a hybrid. The state sells liquor, we understand. Yes. Yes, sir. So if you want to finish with one point, that's fine, but one point. Okay. The one thing that I would say is that in terms of evidence of illegal out-of-state retailer shipments, I believe, Judge Sutton, you asked Mr. Sands about that. Again, there is evidence in the Erickson Affidavit, not with respect to Michigan, but with respect to Illinois, that the Illinois Liquor Control Commission issued multiple cease and desist letters. And it's certainly valid for Michigan to look at the unfortunate experience of Illinois. All right. Thank you. We'll hear from the other side. Thank you. May it please the Court. This case really starts with Granholm v. Heald, where the Court reviewed the history of the 21st Amendment and concluded that it did not permit a discriminatory regulation, and it struck down a law that allowed in-state but not out-of-state wineries to ship. So if you think that's the key point in the case, how do we have that problem here? I don't see why. No one from Indiana has any limit in terms of getting all the benefits of being a retailer in Michigan, including the direct shipping. You just have to open up a shop in Michigan. And the Court over and over, and our Court, has said you can, if you put out to the side length of time you've been there, the length of the residency requirement, a la Tennessee, but just say you have a physical presence, you're good. And that requirement's been upheld for a long time. So I don't see how it's analogous at all to that case. Well, I think there's actually only been one case that directly faced a specific physical presence requirement for an out-of-state entity seeking to ship, and that was Granholm. And it said that a state cannot require an out-of-state firm to become a resident in order to engage in direct shipping, because if Michigan could require an Internet seller to build a bricks-and-mortar facility there, then the Supreme Court said in Granholm, then so could every state. And interstate commerce is shut down, because now if you're going to sell small quantities in a lot of states. Maybe I'm misremembering Granholm. I thought it was about in-state producers getting a benefit. Am I wrong about that? Was that the discrimination, in-state producers? There were two cases in Granholm. I know, but I thought that was the one you were relying on, the discrimination, the benefit given to the in-state wineries. Am I wrong about that? No, this was an analysis of the New York scheme, which had two statutes. One gave in-state wineries the benefit of direct shipping. The other statute, which is the one that the court commented on, said an out-of-state winery could also gain direct shipping by establishing a premises in the state, and it addressed both of those questions in Granholm. And it cited that provision on page 474, 475 in the Granholm opinion. It also linked that. So let me just make sure I'm getting your argument. Is the point of your argument you can't have a presence requirement, and if you do, that's by definition discriminatory, because it's a lot easier to have a presence in the state of the regulation? I mean, is that the premise of your argument, and you're saying Granholm already resolves this? No, because Granholm did not resolve the question that they raised about the ñ Granholm addressed only the producers, the wineries. And there was, in the time between Granholm and Tennessee Wine v. Thomas, there was a lot of activity in the courts of appeals that asked the question whether or not, because the winery shipping was bypassing the three-tier system, whether that nondiscrimination principle from Granholm actually applied to the retailer tier. Tennessee Wine v. Thomas answered that when they said there is no basis for distinguishing among tiers when we are talking about discrimination. The review of the history of the 21st Amendment says the state can set up its distribution system any way it wants to. And, for example, California, to answer their question, does not have a three-tier system. The wineries do not have to go through wholesalers to have their products sold at retail. They can go directly to the retailers. Tell me why it's discrimination at all. So just hear me out on this point. It's really a GM versus Tracy point. In order to have discrimination for Commerce Clause purposes, you have to be talking about two like-situated entities. If they're differently situated, it's possible you can treat them differently. And the reason this doesn't seem like discrimination is the Indiana-based retailer lives under a very different set of rules than the Michigan-based retailer. The Michigan-based retailer has all these restrictions. They can only get from Michigan wholesalers, and there's all these price rules and other regulations of that. And if you allow what you're asking for, you end-run all of those restrictions. And it seems like what actually happens if you win is it creates favoritism. Victory is what creates discrimination, not its opposite, because you're not stuck with any of the rules that apply to Michigan wholesalers. And that seems quite problematic. Except for the rule about local processing that it had to come from a Michigan wholesaler, Michigan can apply all of its rules to interstate shipping. I'm making the point that if Libanov can direct ship into Michigan, it's buying not from Michigan wholesalers. It's buying under a different regime with different restrictions. That makes them differently situated than the Michigan retailer based in Michigan subject to the Michigan rules. Differently situated but not in a relevant way. The cases have all said that entities, for Commerce Clause purposes, entities, in-state and out-of-state entities, are similarly situated if they are selling the same product. They have also said that the Commerce Clause, under the sort of general notion of the nondiscrimination principle, guarantees residents, citizens of the state, access to the markets of other states. Let's posit an extreme example, but I think it helps illustrate my point. Think of Utah. So Utah has a lot of regulations on what alcohol can be sold. Let's now take this exact same argument you've got here. You're next door to Utah and you want to have your retailers be able to direct ship into Utah. The retailer in Nevada is following the Nevada rules, no obligation to follow the Utah rules, completely and running them through direct shipment into Utah. It completely violates the point of their scheme, which is I think fundamentally have less alcohol sold in the state and have it heavily regulated. I thought the 21st Amendment allowed them to do that. Your theory, where you can direct ship in as long as you can show someone shipping within the state, just breaks that down. I'm right about that, I think. With one premise missing, which is did Utah change its policy to allow in-state retailers to ship around the state? If so, then you have a parallel situation. Retailers engaging in shipping. Right now, to my knowledge, Utah requires everyone to show up in person and show an ID. Michigan could do that. But the point is once they create this internet market – But the way you just put the point would suggest Judge Tarnow was right about his constitutional ruling but very wrong about his severability ruling. No, because the severability statute in the Michigan Liquor Control Code says if a provision is found unconstitutional, the offending provision shall be severed. And that's what Tarnow did. He found there's a provision in 436.1203 that appears twice that says a licensed retailer holding what they call the SDM, specially designated merchant license, may ship only from a location within the state. That's the provision he found offended the Commerce Clause, and that's what he struck. The way you put the point was the thing that creates the discrimination is that Michigan decided to allow local Michigan-based retailers to direct ship. I take it if they got rid of that but still kept their presence requirement. Correct. Then you would not have a dormant Commerce Clause problem. Well, then you'd have the Tennessee wine. I want to know the answer. Do you concede that's okay or not? Because that lets me understand what the real source of your argument is. And my suspicion is you think a presence requirement is always unconstitutional. No, no, no. I meant a presence requirement as a precondition to direct shipping. I didn't mean a presence requirement. Okay, so then the answer to my question is real easy. If they got rid of the direct shipping, there would not be any dormant Commerce Clause problem with Michigan requiring people who want to sell to Michigan consumers having a presence in Michigan. I think that is correct, yes. Your real argument, as I understand it, is they could do this if the system they create is pure. But it's not pure, I think, in two respects. One is the in-state retailers can direct ship, right? Correct. And you can get the special license if you're an out-of-state producer and you can direct ship. Correct. So if they got rid of both of those things, then your case probably falls apart. I think that's probably true. But once you have those things, then you say that you can no longer maintain your promoting health and safety arguments because it's been undercut by those two exceptions. I'm not going quite that far. What the cases say is the state gets the opportunity in a heavily regulated product, toxic waste, raw milk, alcoholic beverage. They get the opportunity to prove with concrete evidence that the direct shipping causes a problem in the first place, and there's no evidence of that. And, more importantly, that reasonable non-discriminatory alternatives would not be effective because of some unique – What is the shipping things or ease of buying things? I mean, is it a problem that you can order online and then pick up? I mean, that makes it – that facilitates getting the product. Is that a problem? Well, not for Mr. Donovan it doesn't. He still has to drive 30 miles to the nearest store to pick it up. No, I'm making the point. When Michigan facilitates sales by Michigan-based retailers, every time they do that, does that create discrimination because someone who sells across the border doesn't have that option? No. So they can do – I mean, you could have an order online, and then if you pick up a certain time, you could have drive-through. That facilitates, right? Right. Could you have employees delivering? The employees delivering, again, that presents an interesting cross-border question. That was the situation before when Michigan for eight or nine years allowed delivery by own employers because, again, they'd have to show that there's – What makes it problematic, that they allow delivery or they'd allow delivery to go across the border? That if they allow in-state delivery and don't allow cross-border delivery, then you've got the potential discrimination against interstate commerce. Is this allowing the employees to say, we're going to bring it to you? Yes. Well, that's Judge Hood's decision from the district court. That's right. Some time ago that led to the change in the law. Correct. And that – because all the cases, Tennessee- What about employees just bringing it out to the parking lot? That's okay. Yes. That's the wine country gift package. I don't care. Just tell me if it's okay. I want to know the principles and where the lines are. Employees can bring it out to the parking lot. They can't bring it to the home. Correct. And I'd go one step farther, which is some states – Texas being an example – has a law that says they can deliver in their own vehicles but only within their own county. Now you still – if you do a parallel to an – Is that okay or not okay? Yes. Because – That's okay. That's okay. Because it's limited? We have drive-through liquor stores in Ann Arbor. At least they did. I think they're still there. I think they do, and I think they have them in Ohio, too. I was kind of surprised when I discovered that since I came up from North Carolina, which was a control state. Maybe I didn't understand your last point. You were saying in Texas something you thought was okay was employees of the retailer could deliver as long as within the county. Right. That meant that there's no discrimination if you say, fine, an out-of-state retailer can do whatever they want to within their own county. Once you create – I would have thought it's within the state is the level of generality. Yes. Because it's the state – oh, you agree with me. You can deliver within the state. And if so, you have to allow out-of-state. No, no, no. I was making the point that it's the level of generality is within the state because it's the state that's regulating and creating the whole system. It is still facially discriminatory because the statute says in-state business can, out-of-state cannot. The whole three-tier system is facially discriminatory. It is balkanized economy. We have to agree with – so it's funny to say it's facially discriminatory when the whole thing is. But that's been breaking down because the court repeatedly, including this court in Cherry Hill Vineyards, had said the state has to justify the need to discriminate. It has to show that it actually advances a legitimate state purpose and that reasonable nondiscriminatory alternatives are unavailable. So that's what's missing. But their two-step point is this facilitates sales. We're making life easier on the consumer. And when we say you can't do it if you're an Indiana retailer, it's not because we want to discriminate. We don't want somebody to sell in the state who hasn't complied with our rules at the wholesale level. That's not discrimination. That's respectability. It's not intentional discrimination, but the question is whether it has a discriminatory effect. And the record is, and this was emphasized in Granholm and the Federal Trade Commission studied it, that these restrictions not only affect price but reduce availability. And the record shows that our plaintiffs couldn't get their wine that they wanted. The experts, they couldn't find it available in Michigan. Mr. Sands and Ms. Shekels say that the evidence doesn't support that because they claim that every wine that's out there that is available where the producer wants to sell it in Michigan, the wholesalers will buy it. They say that, but it is not in the record. And what the record does show from the two expert witnesses, Mr. Wark and Mr. Bridenbaugh, and from the consumers themselves, is that the wine is not available. And the particular problem are older vintages and rare wines. I feel like I'm missing this line of inquiry. What is it about the recent direct shipping rule that creates this absence of choice? Let's accept, in other words, that the state is wrong. There really is a material absence of choice. But the recent direct shipping, that's not the explanation for it. The explanation for it is the preexisting multi-decade three-tier system. That's why I'm not getting this line of thinking. Yes, but I guess I agree with you. You have in front of us the direct shipping problem. That didn't create the lack of choice problem. I agree with you. But the lack of choice problem is resolved if you allow the consumer to go directly to this purveyor of this rare wine and buy it directly over the Internet. That's right. The courts have said that it is a presumptive violation of the nondiscrimination principle of interstate commerce for a state law to prevent a consumer from having access to what is available in a market in another state. That's the balkanization. Why should a person who lives in Indiana be able to get some wines that the person living a few miles across the border in Michigan cannot? All of this was true before the shipping rule. It was. All of it was true before that, but the shipping rule changed it, and Granholm changed it, and Tennessee Wine changed it. It changed it, except for the sake of argument, changed it in the sense of gave you an argument you could make. But it didn't change the preexisting problem. No, they didn't change it. The market. It didn't change the market. That's, I guess, the point I'm getting at. It gave you the argument. You didn't have the argument. The problem still existed, but you didn't have an argument to attack it. That's right. I think that's right. The fact that the problem exists. Now we know what the pretext is. The pretext is the frustration of consumers that there's this big Internet out there. They can get everything they want to except one thing. Well, let me ask you about that. Repeal the 21st Amendment. Then all bets are off. You get everything you want when you get rid of that. This just occurred to me. There is a secondary market in these wines and liquors, for that matter, right? I know nothing about wine drinking. I know nothing about liquor, and there's nothing in the record about liquor, so I don't know. I'm just curious about wine. If there's a secondary market for these rare wines, and I believe that there is. There is, yes. There's evidence in the record. If you go to that secondary market seller, whatever we'll call them, does that violate the Michigan three-tier system? If that secondary seller who bought the wine from an out-of-state or a French producer, whoever it was, and now they're reselling it, presumably at a higher price, can they ship directly into Michigan, or is that a violation of Michigan law? It depends on whether Michigan law prohibits its own in-state retailers from reselling old wine. If it did, it could impose that same prohibition on interstate shipping. So you don't know? I don't believe that it has any restriction on old wines, and it certainly doesn't have any restriction on the example that Mr. Breidenbaugh talked about in his report, which is popular wines sell out locally. Not only just recent popular wines. You get a good review in Wine Spectator, and there's a run on them. Consumer buys a bottle, takes it home, likes it, goes back to the store, and the store says we're out. They contact the wholesaler. Can you get some more? Which they claim they can get anything. But as his evidence shows, if you go to the winery itself and say we've got more customers that want this, the winery says we sold out. We don't sit on our supply. We sell it and go on to the next year. But the product is readily available at other retailers selling on the Internet. That's the core of the problem. One thing you could definitely help me with is the extent to which the state of Michigan is exaggerating the differences in how Michigan regulates wholesalers and Indiana regulates wholesalers. I mean, it would be helpful to your side to say there really aren't that many differences, and this really is about a northern Indiana retailer that has a bunch of customers in Michigan that just wants to facilitate the sales, and that it's exaggerated to say they really are treating the wholesalers that differently in the two states. Oh, I think that would have been helpful. But what the courts do is they place that burden on the state to justify the need. Okay, fine. I'll call the burden on them. Just tell me why you don't think it's that different. I don't see any evidence that there's anything any different in who all wholesalers are licensed. All wine is heavily regulated by the Federal Tax and Trade Bureau. So can you do below cost in Indiana? You go out of business pretty quickly if you're selling things below cost. I mean, it is not realistic. Plus, even if they sold in some muscle. I'm teeing it up for you. You can do with it what you want. Shipping costs. You've read what they've said are the heavy regulations on the wholesalers that affect the Michigan-based retailers, and they're saying if you win, you're end-running that with an Indiana retailer. You can accept the invitation or not. Just tell me the things they're saying that you think are exaggerations when it comes to the end-run argument. It is an end-run, but it has no effect. That is, underlying that is an assertion that somehow Indiana and the federal government combined don't properly regulate this stuff. So it poses some danger to the public, and only Michigan. I'm with you that there might be some exaggeration on the adulteration. I mean, the key thing they do have, of course, is suspending licenses of in-state retailers. They don't have access to that with the out-of-state. But you're probably right. On wine particularly, there's probably not a big adulteration problem. Any other things they're saying? I want to know, though, why you said it has no effect. Would you just expound on that just a little bit for my benefit? What Granholm, Tennessee Wine, and this Court's decision in Cherry Hill say is that to justify a facially discriminatory law, which this is, the state has to prove that it has an actual effect that promotes its interest in public health and safety, and that no reasonable non-discriminatory alternative would also advance its interest, so that they have yet to identify a particular effect, actual public health effect. They admitted there's never been. Okay, so you're really saying that they haven't identified an effect. There's nothing shown in the record. There's nothing in the record. And for the life of me, I cannot think of an effect that, I mean, there are dozens of different wholesalers in Michigan. Where the wholesaler, I mean, interstate commerce stops if you start worrying about who the wholesalers are, because every business, in-state and out-of-state, whether it's liquor or not, has a different supply chain. They get it from different wholesalers. And this is not the first time that the courts have dealt with issues of potential public health and safety. They did it in all the toxic waste cases in the 70s. They did it in all the raw milk cases in the 30s, 40s, and 50s. And they've always reached the same decision, which is they have to identify that not just that shipping wine generally poses some kind of danger to the public, youth access and things like that, but they have to show that there's something different about wine that's moved through the Indiana regulated three-tier system and wine that's moved through the Michigan three-tier system. Go ahead. You're a Michigan consumer. You think Libemoff has some wine that you can't otherwise get from your local retailer. You drive across the border to Libemoff. Can Libemoff, I mean, Libemoff can sell it to you. You can put it in the car. You can drive it back. It may violate some tax law or something. I don't know about that. Can a Michigan retailer go to Libemoff if they know they have this wine and then buy that for the Michigan consumer to buy from the Michigan retailer? No. Because it didn't come from the wholesaler. The law restricts the Michigan retailers. Let me give you this analogy. It may not be a completely imperfect analogy, but I'm from Michigan. We're car people. We understand cars. So you want to buy a car. The car is not available at your local dealer's lot. It's at the end of the model year, so they can't get it from the manufacturer. But they simply go online, and they get it from another car dealer. It could be in California, and that's how you buy cars. Yes. So your analogy here, I mean, your answer is that the reason you can't do that in wine is because not only can the consumer not buy it direct, the retailer can't go to another retailer, an out-of-state retailer. I don't believe that. That's what I just asked you. Can my local retailer buy it from Leibonoff? Leibonoff ships it to my Michigan retailer, and then they sell it to me. I don't know the answer to that because it occurs to me that there are some states that allow one retailer to sell inventory to another retailer as long as both have licenses. Like at Walmart. Yes. Like if a wine retailer goes out of business, what do they do with their inventory? They can transfer it to another retailer. I was just picking up on your answer earlier where you said that the bottleneck is you can't buy this rare wine from other retailers in other states. But that assumes in the first place that there is some retailer that wants to go to all of the expense to get two bottles of wine. That's a wonderful question. I was trying to say why isn't it as easy to get a rare bottle of wine as it is to get a car. That's what he's saying, and I think you should say it should be just as easy. It should be just as easy. When you're standing on this side of the podium, all questions seem hostile. Isn't that the truth? I so remember that. I know. We should be nicer up here. You just say whatever you want right now. We won't ask questions. I should be prepared. My red light appears to be on. I have lost track of my time. It's not on from our side. Oh, wait a minute. I've got two. That was my microphone light. I've got two minutes and 49 seconds here. You don't have to use it. No. I guess I would just summarize by saying that what has been missing from much of this discussion? I was trying to ask something earlier just to drill down on when you focus on their burden. I think the way you're saying it is they have to show that they're doing this protectionist thing to make sure the way the product sales are. There's no adulteration. They're not sold to minors. You're not messing up the product, and I take it the reason you say that's where their burden is is on those things. Because if they go back to cost and they have the right to set prices, that to you just is all economic protectionism, and that can't be a justification. Is that the way you would look at it, even though it grows out of the three-tier system? In other words, the things of the three-tier system that are legit are adulteration, sales to minors. Not legit are price controls. Are price controls. But that – I must say I thought that was embedded in the three-tier system. I really thought price controls see Utah. That was embedded in the three-tier system. It is. It is in some – So that's okay. In some states. It is not embedded in – This just goes back to the exchange of Judge McKeague about you can do that, but then the minute you do something that has a discriminatory feel to it, you put at risk the whole thing. You'll put at risk that one rule because, again, it's nondiscriminatory alternative availability. You can simply establish minimum prices for wine shipped from out of states. You can do – It's price control, but you have to do it across the board for all wine that's being sold. That's right. You can – I mean there's nothing – If we get – I take it then maybe I'm not – didn't get your argument. This is not just about the consumer – the access of Michigan retailers to direct ship. Even if they got rid of that but still had this exception for small wineries to direct ship, you would still say there's a problem. No, because then you wouldn't have similarly situated entities. I did understand your argument then. It was retailer versus retailer, shipping versus non-shipping. That's the essence of it. And given that 13 other states allow retailer – licensed retailer shipping, and the courts have said both in this case and in this court in Cherry Hill and in Granholm that it is a relevant factor in deciding whether or not the other side has proved the unavailability of nondiscriminatory alternatives to look and see what other states do because presumptively they are all interested in regulating alcohol for the same reasons. Thank you. Thank you. Mr. Sands, do you have some rebuttal here? Price controls are a legitimate reason for a three-tier system because Michigan can decide that two-buck chuck is fine because it balances availability with the danger of overconsumption. Indiana can decide that one-dollar chuck is okay. And Utah can decide that three-dollar chuck is okay because the 21st Amendment and the Webb Canyon Act before that gave the state the right to pass – I think he just conceded all that's true, but the problem here is the direct shipping thing that other retailers don't get. Because they're not within our three-tier system. They're a completely different entity. You've allowed them to sell in Michigan without controlling the price from some wine. That's his whole argument. So, therefore, you've already – Michigan has conceded that it can be done, and you haven't pointed to any problems flowing from it. At least I think that's the argument. Well, we have had problems flowing from direct shipments from wineries, and the record is replete with those problems, including sales to miners. That goes to remedy. I mean, we fix that problem if we just don't adopt the turnout remedy. That's right. If that's true, and you agree with everything Mr. Tanford said, then the remedy is all direct shipping is out because that is – under Cherry Hill, that is the clear intent of the legislature was not to open up shipping to out-of-state retailers. In fact, it's the opposite. They got rid of shipping for out-of-state retailers altogether to keep sale at retail within the three-tier system. Unless this Court has any further questions. No. Thank you, Your Honors. Thank you so much for your helpful briefs and arguments. Sorry. I think she thinks she has some. Oh, really? I thought – I wonder if three minutes. Okay. Go for it. You have a sense for my interest in it. All right. It's not you. I will persevere. It's that I thought we usually only have one set of rebuttal, and I didn't realize that's what happened today. Oh. So go ahead. I'm sorry. Your deputy asked, and I said yes, so I apologize. Two very brief things. This is not a car. This is not toxic waste. This is not fish. It's beverage alcohol. So you do need to look at the 21st Amendment. Chuck, we fully understand that the 21st Amendment doesn't apply to cars. I understand, Your Honor, but Mr. Tanford's argument to you is sliding down and getting us back into plain, strict scrutiny that does not take into account the 21st Amendment. For example, the issue is not is Michigan doing a protectionist thing, to use your language, Judge Sutton. The first inquiry is, is this discriminatory? Assuming it is, assuming that these folks are similarly situated, which, you know, in our brief we've said no, then the question is, okay, what kind of discrimination is it? Is it solely protectionist, or is the predominant effect solely protectionist, or is it for the protection of public health and safety? It's not that it has to be the – You have to concede that the system is protectionist with respect to both the wholesaler and the retailer. I disagree, Your Honor. It doesn't protect – It is discriminatory, but it is not protectionist. You're kidding. You're free of interstate competition and that's not protectionist? I am not – I'm not asking you if that's the predominant motive. I'm just saying that's got to be an effect under Economics 101. If it's an incidental effect and that someone used that adverb, okay, but it is not protectionist discrimination in the standard that we have to look at this case because of what – become protectionist, where is the line? When do you get to it? For example, in Granholm, New York did not even – they did nothing other than concede that that statute was to protect the local farm winery in that state. It was a big legislative agenda, and it was also big with the executive. All right? So that is protectionism. Same thing with Bacchus, right? There, Hawaii, they didn't put up any argument. They conceded that that tax only on non-Hawaiian wine was to protect the local pineapple industry. But it can't just devolve to the use of a label. I absolutely agree with you, Your Honor. But contrast Granholm, contrast Bacchus, contrast Tennessee wine, where in that case the state did not put up a defense, right? They were arguing as a matter of law. There was no evidence there. This is a very different situation. We have a whole binder full of affidavits to show what is the effect. The effect, the predominant effect is the protection of public health and safety. And I've cited you the Kaminsky affidavit that – Yep. Your time is up. Okay. Thank you very much. But there was one last piece. There was a recall of wine, Your Honor, in the state of Michigan. It's in the Kaminsky affidavit. Okay. Thanks to all three of you for your helpful arguments and for your briefs. We really appreciate it. The case will be submitted. The clerk may call the next case.